[Cite as *In re I.L.*, 2020-Ohio-2946.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE I.L.

A Minor Child

[Appeal by Mother]

:
:
:
:
:
:

No. 109034

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** May 14, 2020

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-17918915

### *Appearances:*

Michael E. Stinn, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Willie Mitchell, Assistant Prosecuting
Attorney; Joyce E. Barrett, and James P. Reddy, *for
appellees*.

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Appellant-mother ("mother") appeals from the juvenile court's
decision that awarded legal custody of her child, I.L., to I.L.'s biological father
("father"). For the reasons that follow, we reverse the trial court's judgment and

remand with instructions for the trial court to issue a judgment entry adopting the magistrate's decision that awarded legal custody of I.L. to mother.

## I. Procedural and Factual Background

{¶ 2} In December 2017, the Cuyahoga County Division of Children and Family Services ("CCDCFS" or the "agency") filed a complaint alleging I.L. to be a dependent child and requesting a disposition of temporary custody. CCDCFS also filed a motion for predispositional temporary custody. The court granted the motion and committed I.L. to the predispositional custody of her paternal aunt, A.S.

{¶ 3} In February 2018, the court held an adjudicatory hearing during which mother admitted to the allegations of the amended complaint and agreed to an adjudication of dependency. At the subsequent dispositional hearing in June 2018, I.L. was committed to the temporary custody of A.S.

{¶ 4} In September 2018, CCDCFS filed a motion asking the court to modify its order of temporary custody to A.S. to legal custody to father. Father also filed a motion for legal custody of I.L.

{¶ 5} On November 29, 2018, a juvenile court magistrate commenced a hearing regarding the agency's and father's motions. Renae Cameron, a CCDCFS social worker assigned to the case in late September 2018, testified that I.L. was eight years old and had always lived with mother before the grant of pre-dispositional temporary custody to A.S. She said that CCDCFS had developed case plans for both mother and father, with the goal of reunifying I.L. with either parent

who complied with their case plan and demonstrated a benefit from the case plan services.

**{¶ 6}** Cameron said that father's case plan required that he have adequate housing, complete a drug and alcohol assessment and any recommended treatment, complete domestic violence/anger management classes due to mother and father's history of domestic violence, and engage in family counseling with mother to learn ways to effectively co-parent with her. Cameron said that father had substantially complied with his case plan, and that although he had tested positive for marijuana in January 2018, subsequent random drug tests had been negative.

**{¶ 7}** Cameron testified that mother's case plan was to obtain stable and adequate housing, complete a drug and alcohol assessment and any recommended treatment, complete a mental health assessment and engage in recommended mental health services, complete domestic violence/anger management classes, and participate in counseling with father regarding effective co-parenting.

**{¶ 8}** Cameron said that both mother and father had "substantially complied" with their case plans, although mother had not completed the mental health and substance abuse portions of her plan. Specifically, Cameron testified that although mother had completed her outpatient substance abuse treatment program, mother had twice not submitted random urine samples within the time-frame requested by CCDCFS, although she ultimately submitted a negative test each time. Cameron also said that in August 2018, mother's drug test showed the presence of a

drug commonly used to treat mental health issues but mother failed to submit the requested documentation evidencing her prescription for the drug.

{¶ 9} With respect to mother's mental health issues, Cameron testified that mother had been diagnosed with PTSD, bipolar disorder, anxiety, and depression. She said that mother had been compliant in taking her prescribed medications but inconsistent with attending mental health counseling, although Cameron acknowledged that mother told her this was due to scheduling issues because she was going to school. Cameron testified further that mother had been hospitalized for mental health issues shortly after the case commenced and again in August 2018. Cameron testified that the agency believed it would be in I.L.'s best interest for father to have legal custody because mother's hospitalization in August and untimely drug screens indicated she had not benefited "consistently" from her case plan services.

{¶ 10} Cameron testified that mother and father had equal time with I.L. — several days each week and every other weekend. She said that she had observed I.L. in both mother and father's homes, and that I.L. was comfortable and respectful of father, but seemed more "defiant" at mother's house, although she acknowledged that I.L. could simply have been having a bad day. Cameron said that I.L. was in the third grade at a private school she had attended since kindergarten, where she engaged in various school activities and individual counseling each week to deal with the violence she had observed between mother and father. Cameron said that father planned to keep I.L. in this school for the remainder of the year if granted legal

custody, but had not made a decision whether I.L. would go to a different school the following year.

{¶ 11} Due to time constraints, only Cameron testified on November 29, 2018. Mother, mother's attending physician for her hospitalization in August 2018, father, A.S., I.L.'s guardian ad litem, and social worker Cameron testified when trial continued on February 5, 2019.

{¶ 12} Mother testified with respect to her mental health that she had treated with Dr. Phillip Fischer at Psych BC from 2013 to May 2017, and that he diagnosed her with ADHD, depression, and PTSD as a result of the domestic violence with father.

{¶ 13} She admitted she had been voluntarily hospitalized in December 2017, shortly after the case began, because of her separation anxiety related to I.L.'s absence from her home. She said that the CCDCFS caseworker assigned to the case before Cameron recommended that she see Dr. Patel Reddy for mental health treatment upon her discharge, and that Dr. Reddy prescribed numerous medications for her, many of which caused significant side effects. She testified that one night in August 2018, she had such an adverse reaction to one of the prescribed drugs that she became disoriented and required hospitalization. Mother denied that she tried to commit suicide by a drug overdose, and said she voluntarily went to Windsor-Laurelwood Center for Behavioral Medicine after her hospitalization in order to obtain treatment to adjust her medications.

{¶ 14} Mother testified that she changed doctors after her hospitalization, and had been seeing Dr. Inna Krasnyansky — a doctor she chose and who prescribed far fewer medications for her than Dr. Reddy — since October 2018. She testified further that since November 2018, she had been meeting regularly with Samantha Hoch, a therapist at the Domestic Violence Advocacy Center, and with Renee Haber, a friend who is a therapist. Mother testified that she "gained insight into her situation" when she took the domestic violence classes in April 2018, and that she "really started to benefit" from her case plan services at that time. Mother said that she was no longer ashamed to have a mental illness and planned to continue treatment with her mental health care providers even after the case was over.

{¶ 15} Mother testified that she was twice unable to drop urine screens within the time period requested by CCDCFS because of conflicts with her work as a nanny and her EMT training. She said that she completed EMT training in January 2019, and now works as an EMT technician and sometimes as a nanny when parents need her. Mother said she has a very supportive family who could help her care for I.L. when needed, including her brother who lives in an apartment across the hall from her.

{¶ 16} Dr. Rajesh Chandra, division chief of internal medicine at University Hospitals Medical Center, testified that he was mother's attending physician during her hospitalization from August 9-12, 2018. He said the initial admitting diagnosis was "pharmacy overdose," and that mother told him she had taken five or six Klonopin pills, 25 Seroquel pills, and an unspecified amount of BuSpar.

Interestingly, Dr. Chandra testified that mother's drug screen testing was negative for the presence of opiates, and did not show the presence of Seroquel or BuSpar. He said the drug screen showed only the presence of amphetamines, which was consistent with the Adderall mother was taking for her ADHD. Nevertheless, he testified that the amount of drugs she had admitted taking would not likely have been taken by accident, so the presumption was the overdose was intentional. Dr. Chandra testified that mother was admitted to Windsor-Laurelwood for psychiatric treatment after her hospitalization, and that her admission there was considered involuntary because she had allegedly tried to harm herself by overdosing.

{¶ 17} A.S., father's sister and I.L.'s paternal aunt, testified that she is a licensed social worker, and that I.L. had been in her temporary custody since December 2017. A.S. said that I.L. is bonded with father, and after her visits with him, returns to A.S.'s home clean, in appropriate clothing, emotionally stable, and ready for bed. She said that I.L. is also bonded with mother and enjoys spending time with her. A.S. testified that when I.L. returns from a visit with mother, she is "more emotionally disregulated," sometimes has temper tantrums, and is hard to put to bed. A.S. testified that once in November 2018, when she went to pick up I.L. from mother's apartment, she smelled an odor of marijuana coming from her apartment.

{¶ 18} Father admitted that he initiated the case by calling CCDCFS and anonymously raising concerns about mother's housing and drug use. He said he has lived with his girlfriend and her two young children since 2016, and I.L. is close with

his girlfriend's children. He has worked for the same company since 2015. Father admitted that he tested positive for marijuana in December 2017, but said he has not had any positive drug tests since then. He said he completed six sessions of anger management counseling, and there had not been any incidents of domestic violence between him and his girlfriend. He admitted that if he gained legal custody he would like to continue sending I.L. to the private school she had attended since kindergarten, but as of the date of the hearing, he likely could not afford to do so.

{¶ 19} Social worker Cameron testified again at the February 2019 hearing. She testified that both mother and father had benefited from their case plan services, both can manage I.L., and at times they can successfully communicate with each other about I.L., which was not possible when the case started. She testified further that mother had completed her case plan objectives, but CCDCFS had concerns about how much she had benefited from the case plan services because of her hospitalization in August 2018, as well as concerns about her consistency because she had changed mental health providers several times. Upon questioning by the magistrate, Cameron admitted that mother's alleged inconsistencies had not caused her to neglect I.L. or affected her care of her, and that after her hospitalization in August, mother had not demonstrated anything that would indicate she had mental health issues. Nevertheless, Cameron testified that it was in I.L.'s best interest that father obtain legal custody.

{¶ 20} Pamela Hawkins, the guardian ad litem, testified that I.L. loves and is bonded with both mother and father. Hawkins agreed that mother's mental health

appeared to be stable, and that no concerns about mother's mental health had been raised since August 2018, but Hawkins said she wanted to see a longer period of mental health stability because mother's mental health had been "very cyclical" over the past several years. She said that her initial recommendation was shared parenting, but because mother and father cannot communicate with each other well enough to co-parent, her recommendation was that father obtain legal custody as the more stable parent.

{¶ 21} The magistrate subsequently issued a decision committing I.L. to mother's legal custody with protective supervision by the agency. The magistrate's decision found that both mother and father had made significant progress on their case plans and in alleviating the cause for the removal of I.L. from mother's home. The magistrate also found that the custody plan was reunification, continued temporary custody was not in I.L.'s best interest, supervision of I.L. was in her best interest, and I.L.'s return to mother would not be contrary to her best interest. The magistrate's decision contained the following factual findings:

> The Cuyahoga County Division of Children and Family Services has made reasonable efforts to finalize the permanency plan for the child. These efforts are parenting education classes, substance abuse assessment and treatment as recommended, mental health services, counseling services for domestic violence and anger management, assistance in finding adequate housing and random urine screens. The Mother and Father have completed case plan services. The Mother completed parenting education, domestic violence services, obtained housing, and has engaged in ongoing mental health services and substance abuse services. The Agency believed that Mother failed to complete the objectives of the case plan so as to reduce the risk so the child could be returned to her as the Mother was hospitalized in August 2018, for an alleged overdose of prescription medication. The evidence

failed to support a finding that the Mother intentionally overdosed or that the Mother still exhibits any signs of suicidal ideations or attempts at suicide. The Mother has changed mental health providers; however, these changes are understandable given the multiple drugs previously prescribed for the Mother by prior providers. The Father has completed all of his case plan goals, including completing anger management services, drug and alcohol assessment (no recommendations), supportive visitation, and family therapy. The Mother and Father have been having equal amounts of visitation with the child. There have not been any reports of problems that have given rise to the Agency requesting a termination of either parent's visitation schedules. The child is very happy with both parents. The Mother needs to eventually get housing to accommodate for separate bedrooms for the child and the child's sibling. The child attends a private school in Pepper Pike, Ohio. The Father is not sure if he would be able to keep the child in the same school if he were to be granted legal custody of the child. The GAL would like to see the Mother have more stability with her mental health and, therefore, recommended that the father have legal custody. The Court believes this could be accomplished by allowing the Mother to have the child in her home with protective supervision.

{¶ 22} Father subsequently filed preliminary objections to the magistrate's decision, and CCDCFS filed a brief in support of father's preliminary objections. Father then filed supplemental objections to the magistrate's decision and the transcript from the hearing.

{¶ 23} On August 19, 2019, the trial court issued two decisions awarding legal custody of I.L. to father: one decision sustained father's objections; the other sustained father's objections and adopted the magistrate's decision as amended by the court. The trial court's judgment entry sustaining father's objections stated that "[u]pon review of the court file, the transcript of the proceedings, briefs of counsel, the magistrate's decision, and the objections, the court finds the objections are well-taken." The trial court's journal entry regarding the magistrate's decision stated that

"upon an independent review of the matter, the court hereby sustains father's objections and approves and adopts the magistrate's decision, as amended by the court, that was filed on February 5, 2019."  Significantly, with the exception of awarding legal custody to father, both of the trial court's entries contained the exact same findings made in the magistrate's decision:  that both mother and father had made significant progress on their case plans and in alleviating the cause for the removal of I.L. from mother's home, the custody plan was reunification, supervision of I.L. was necessary and in her best interest, and continued temporary custody was not in I.L.'s best interest.  More significantly for purposes of this appeal, both of the trial court's journal entries contained, verbatim, the same factual findings contained in the magistrate's decision as quoted above in paragraph 21 of this opinion.[1]

{¶ 24} This appeal followed.

## II.   Law and Analysis

### A.  Were father's objections general or specific?

{¶ 25} Juv.R. 40(D)(3)(b)(ii) provides that "[a]n objection to a magistrate's decision shall be specific and state with particularity all grounds for objection."  A mere blanket objection to the magistrate's decision is insufficient to preserve an objection.  When a party submits general objections that fail to provide any reason, support, or authority for the objection, the trial court may affirm the magistrate's decision without considering the merits of the objection.  *Solomon v. Solomon*, 157

---

[1] The trial court's decision ordered the same parenting time schedule for father as the magistrate had ordered for mother, but ordered that mother have six weeks with I.L. in the summer, whereas the magistrate had ordered that father would have three weeks.

Ohio App.3d 807, 2004-Ohio-2486, 813 N.E.2d 918, ¶ 11 (7th Dist.); *In re D.N.*, 4th Dist. Ross No. 11CA3213, 2011-Ohio-3395, ¶ 18; *Waddle v. Waddle*, 11th Dist. Ashtabula No. 2000-A-0016, 2001 Ohio App. LEXIS 1551, 9-10 (Mar. 30, 2001).

{¶ 26} In her first assignment of error, mother contends that the trial court erred in considering father's objections to the magistrate's decision and should have simply affirmed the decision because father raised only general objections. We disagree.

{¶ 27} Father's preliminary objections to the magistrate's decision set forth three bases for his objections: (1) the magistrate's decision awarding legal custody to mother ignored the guardian ad litem's report and testimony, which recommended legal placement with father; (2) the magistrate's decision ignored CCDCFS's recommendation that legal custody be awarded to father; and (3) the magistrate's decision minimized mother's alleged "multiple overdoses" by ignoring the medical records submitted at trial. Father cited various examples of testimony by the guardian ad litem that the magistrate allegedly ignored when awarding legal custody to mother, referenced CCDCFS's motion to modify custody in which CCDCFS cited mother's alleged inability to maintain sobriety, and referred to the medical records submitted at trial. Father subsequently submitted supplemental objections, along with a transcript of the hearing. In his supplemental objections, he cited to testimony from social worker Cameron, Dr. Chandra, and A.S. to support his objections.

{¶ 28} Father's objections were not merely blanket objections to the magistrate's decision. Instead, he gave specific reasons why the decision was allegedly incorrect and pointed to specific evidence the magistrate had allegedly either not considered or minimized in rendering her decision. Accordingly, the trial court properly considered father's objections, and the first assignment of error is overruled.

**B. Did the trial court abuse its discretion in awarding legal custody to father?**

{¶ 29} In her second assignment of error, mother contends that the juvenile court abused its discretion in awarding legal custody to father because the magistrate's decision properly determined the factual issues in the case and appropriately applied the law. In her third assignment of error, mother contends that the juvenile court abused its discretion in awarding legal custody to father because its decision is not supported by the facts as the trial court determined them to be. We consider these assignments of error together because they are related.

{¶ 30} When a juvenile court awards legal custody following an adjudication of abuse, neglect, or dependency, '"it does so by examining what would be in the best interest of the child based on a preponderance of the evidence."' *In re A.C.*, 8th Dist. Cuyahoga No. 108442, 2019-Ohio-5127, ¶ 15, quoting *In re T.R.*, 8th Dist. Cuyahoga No. 102071, 2015-Ohio-4177, ¶ 44. Preponderance of the evidence means evidence that is '"more probable, more persuasive, or of greater value."' *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 7, quoting *In re D.P.*, 10th Dist. Franklin No. 05AP-117, 2005-Ohio-5097, ¶ 52. There is no "specific test or set of

criteria" that must be applied or considered in determining what is in a child's best interest in a legal custody case. *In re A.C.* at *id.*, citing *In re T.R.* at ¶ 48.

{¶ 31} Pursuant to Juv.R. 40(D)(4)(d), when a party has properly objected to a magistrate's decision, the trial court must "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Under the rule, "the trial court must conduct a de novo review of the facts and an independent analysis of the issues to reach its own conclusions about the issues in the case." *In re I.R.Q.*, 8th Dist. Cuyahoga No. 105924, 2018-Ohio-292, ¶ 23.

{¶ 32} A trial court has the authority to adopt the factual findings of the magistrate but arrive at a different conclusion. *Brandish v. Brandish*, 11th Dist. Geauga No. 2002-G-2489, 2004-Ohio-3544, ¶ 11. As this court has recognized, "'the trial judge always has the authority to determine if the referee's findings of fact are sufficient to support the conclusions of law drawn therefrom [and] come to a different legal conclusion *if* that conclusion is supported by the referee's findings of fact.'" (Emphasis sic.) *O'Brien v. O'Brien*, 167 Ohio App.3d 584, 2006-Ohio-1729, 856 N.E.2d 274, ¶ 14 (8th Dist.), quoting *Hearn v. Broadwater*, 105 Ohio App.3d 586, 588, 664 N.E.2d 971 (11th Dist.1995). Accordingly, "the trial court should not adopt a magistrate's 'findings of fact unless the trial court fully agrees with them — that is, the trial court, in weighing the evidence itself and fully substituting its judgment for that of the [magistrate], independently reaches the same conclusion.'"

*Becher v. Becher*, 8th Dist. Cuyahoga No. 108472, 2020-Ohio-669, ¶ 24, quoting *McCarty v. Hayner*, 4th Dist. Jackson No. 08CA8, 2009-Ohio-4540, ¶ 17.

{¶ 33} A trial court's ruling on objections to a magistrate's decision lies within the discretion of the trial court, and will not be reversed on appeal absent an abuse of discretion. *Hissa v. Hissa*, 8th Dist. Cuyahoga Nos. 99498 and 100229, 2014-Ohio-1508, ¶ 17. An abuse of discretion occurs when the court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). A decision is unreasonable if there is "no sound reasoning process that would support that decision." *Baxter v. Thomas*, 8th Dist. Cuyahoga No. 101186, 2015-Ohio-2148, ¶ 21. A decision is arbitrary if it is made "without consideration of or regard for facts or circumstances." *In re C.D.Y.*, 8th Dist. Cuyahoga No. 108355, 2019-Ohio-4262, ¶ 8.

{¶ 34} In this case, although the trial court amended the magistrate's decision to award legal custody to father, the trial court adopted the magistrate's findings of fact in toto. Thus, as determined by the magistrate and adopted by the trial court, the trial court found that both mother and father had completed their case plan services. The court found that father had completed anger management services, a drug and alcohol assessment, supportive visitation, and family therapy, and that mother had completed parenting education and domestic violence services, and engaged in ongoing mental health and substance abuse services. The trial court further found that mother had obtained adequate housing, although she would eventually have to get housing to accommodate separate bedrooms for I.L. and her

younger brother. The trial court also found that although mother had changed mental health providers, those changes were understandable given the multiple drugs prescribed to her by her prior mental health provider.

{¶ 35} The trial court further found that I.L. was "very happy" with both parents, both mother and father had been having equal amounts of visitation with I.L., and there had been no reports giving rise to a request by CCDCFS to terminate either parent's visitation schedule. The trial court found that I.L. had been attending a private school in Pepper Pike, and that father was not sure he would be able to keep her in that school if he were granted legal custody.

{¶ 36} The trial court further found that although CCDCFS believed that mother had failed to reduce the risk that caused I.L. to be removed from her care because she had been hospitalized in August 2018, for "an alleged overdose" of prescription medication, the evidence did not support a finding that mother intentionally overdosed, or that she was exhibiting any signs of suicidal ideation. The trial court further found that although the guardian ad litem had recommended that father be given legal custody because she wanted mother to "have more stability with her mental health," "the court believes this could be accomplished by allowing mother to have the child in her home with protective custody."

{¶ 37} We find no abuse of discretion in the trial court's adoption of the magistrate's findings of fact. Our review of the record demonstrates that the magistrate accurately set forth the facts as testified to by the witnesses at the hearing. Furthermore, our review demonstrates that the record was equivocal

regarding mother's alleged overdose in August 2018, and one could reasonably conclude that her hospitalization was not the result of an intentional overdose. Furthermore, in light of mother's continued progress with her mental health issues, as demonstrated by the testimony at the hearing, the trial court did not abuse its discretion in finding that I.L. could be returned to mother's home with protective supervision by the agency.

{¶ 38} However, in light of the trial court's findings of facts, its decision to award legal custody of I.L. to father was an abuse of discretion because its decision is not supported by the facts *as the trial court determined them to be.* Specifically, after conducting its own independent review of the matter, the trial court found that the guardian ad litem's concerns that mother needed to demonstrate a longer period of mental health stability could be alleviated with I.L.'s placement in mother's home with protective supervision by the agency. Further, the trial court found that the agency's concern that mother had not consistently benefited from her case plan services because she was hospitalized in August 2018, for an alleged intentional overdose was not supported by the evidence. Thus, the trial court's decision awarding legal custody to father was inconsistent with the court's own factual findings.

{¶ 39} Father argues that the trial court did not abuse its discretion in rejecting the magistrate's decision to award legal custody to mother because "the magistrate did not properly determine the factual issues in the case." The trial

court's decision refutes father's argument, however; the trial court adopted the magistrate's findings of fact verbatim, thus evidencing its full agreement with them.

{¶ 40} CCDCFS, on the other hand, argues that the trial court's decision awarding legal custody to father should be affirmed because "the trial court did not reject the magistrate's factual determination, [it] just reached a different conclusion after analyzing the facts." CCDCFS is correct that the trial court did not reject the magistrate's factual determinations; indeed, it adopted them verbatim. But contrary to the agency's argument, the trial court's "different conclusion" from that of the magistrate is not supported by the facts *as the trial court found them to be*. The only reasonable conclusion from the trial court's findings of fact is that the court found that I.L. should be returned to mother's legal custody with protective supervision by CCDCFS.

{¶ 41} Father and CCDCFS also offer various arguments why the evidence presented at trial weighs in favor of granting legal custody of I.L. to father. But the trial court did not rely on the evidence referenced by father and the agency in rendering its decision; it made no factual findings other than those made by the magistrate. Furthermore, the trial court adopted the magistrate's factual findings verbatim after its own "independent review of the matter." By doing so, the trial court indicated that "after weighing the evidence itself and fully substituting its judgment for that of the magistrate," it "fully agree[d]" with the magistrate's findings of fact. *Becher*, 8th Dist. Cuyahoga No. 108472, 2020-Ohio-669, at ¶ 24.

{¶ 42} In its decision, after conducting its own independent review, the trial court found there was insufficient evidence to support a finding that mother had intentionally overdosed in August 2018. Thus, the agency's concern that mother had not benefited consistently from her case plan services as demonstrated by her hospitalization for an alleged overdose in August 2018, was not supported by the evidence. The trial court also found that the guardian ad litem's concern about mother's mental health could be addressed by placing I.L. in mother's legal custody with protective supervision by CCDCFS. In light of these factual findings by the trial court, it is apparent that the trial court's decision awarding legal custody to father is not supported by the facts as the trial court determined them to be.

{¶ 43} Moreover, the trial court did not find that the magistrate had improperly applied the law in awarding legal custody to mother with protective supervision, presumably because the magistrate was not required to adopt either the agency's or the guardian ad litem's recommendation that legal custody be granted to father. *In re R.J.G.*, 8th Dist. Cuyahoga No. 97427, 2012-Ohio-3802, ¶ 16, citing *In re P.P.*, 2d Dist. Montgomery No. 19582, 2003-Ohio-1051, ¶ 24.

{¶ 44} The magistrate's decision recommended that I.L. be placed in the legal custody of mother with protective supervision by CCDCFS. Because the trial court did not find that the magistrate failed to correctly determine the factual issues or properly apply the law, and because the factual findings as adopted by the trial court do not support an award of legal custody to father, we find that the trial court's decision to award legal custody to father was arbitrary and unreasonable.

**{¶ 45}** Mother's second and third assignments of error are sustained, and the trial court's decision is hereby reversed. In light of our resolution of the second and third assignments of error, we need not address mother's fourth assignment of error in which she argues that the trial court's decision was against the manifest weight of the evidence.

**{¶ 46}** Reversed and remanded with instructions for the trial court to issue a judgment entry adopting the magistrate's decision awarding legal custody of I.L. to mother with protective supervision by Cuyahoga County Division of Children and Family Services.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

KATHLEEN ANN KEOUGH, JUDGE

EILEEN T. GALLAGHER, A.J., and
MARY EILEEN KILBANE, J., CONCUR