[Cite as *In re C.V.M.*, 2013-Ohio-3361.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No.   99426

---

## IN RE: C.V.M., JR.
## A Minor Child

[Appeal by C.V.M., Sr., Father]

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD 03902263

**BEFORE:** E.A. Gallagher, J., Celebrezze, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** August 1, 2013

**ATTORNEY FOR APPELLANT**, **FATHER**

Mark S. O'Brien
Heights Medical Center Building
2460 Fairmount Blvd.
Suite 301B
Cleveland Heights, OH   44106


**FOR APPELLEES**

**FOR STEPMOTHER**

A.W., pro se
1822 Walford Road
Apt. 309
Warrensville Heights, OH   44128


**FOR MOTHER**

L.S.M., pro se
4889 Banbury Court #2
Warrensville Heights, OH   44128

**GUARDIAN AD LITEM**

Michael B. Granito
24400 Highland Road
Suite 162
Richmond Heights, OH   44143

EILEEN A. GALLAGHER, J.:

{¶1} Father-appellant appeals the trial court's decision that found him to be an unsuitable parent and awarded legal custody of his son, C.V.M., to appellee-custodian (hereinafter "stepmother"), a nonparent. For the reasons that follow, we affirm.

{¶2} The pertinent background facts of this case were stated by this court in *In Re: C.V.M., Jr.*, 8th Dist. No. 98340, 2012-Ohio-5514 ("C.V.M. I") as follows:

> Appellant is the natural father of C.V.M., who was born in 2003. In 2004, the juvenile court granted custody of C.V.M. to father and his wife, who is not C.V.M.'s biological mother. Both father and wife acted as parents to the child. In 2010, wife filed for divorce against father. In May 2010, father filed a motion with the juvenile court for sole legal custody of C.V.M.; however, wife (hereinafter referred to as "custodian") obtained physical custody of the child. In August 2010, custodian was granted temporary custody of the child and was granted a divorce from father. Thereafter, a myriad of contentious motions were filed, and allegations were made by the parties against each other. Ultimately, motions were filed by custodian for sole legal custody of C.V.M. and by father for modification of the temporary custody order.
>
> The trial court held a hearing on all pending motions, including the motions affecting the sole legal custody of C.V.M. The crux of the hearing was to determine who would be the child's legal custodian. The trial court took testimony from father, custodian, C.V.M.'s guardian ad litem, C.V.M.'s birth mother, and five character witnesses called on behalf of father. Following the hearing, the trial court issued a judgment entry and written opinion granting legal

custody to custodian after finding that an award of custody to father would be detrimental to the child.

*Id.* at ¶ 2-3.

**{¶3}** In C.V.M. I, this court reversed the judgment of the trial court awarding sole custody to stepmother and remanded the case for the trial court to apply the correct legal standard of parental unsuitability to the facts elicited at the hearing. Upon remand, the trial court issued a new judgment entry finding appellant to be an unsuitable parent because an award of custody to appellant would be detrimental to C.V.M. The trial court again awarded legal custody of C.V.M. to stepmother. Appellant appeals from this judgment, asserting the following sole assignment of error:

> The trial court abused its discretion in determining that [appellant] was an unsuitable parent.

**{¶4}** A trial court enjoys broad discretion in custody proceedings because "custody issues are some of the most difficult and agonizing decisions a trial judge must make." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997-Ohio-260, 674 N.E.2d 1159. A trial court's custody determination will not be disturbed unless the court abused that discretion. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). An "abuse of discretion" connotes that the court's attitude is "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶5}** While the trial court has discretion in custody proceedings, the record must contain sufficient factual evidence to support the court's findings. C.V.M. I, 8th Dist. No. 98340, 2012-Ohio-5514, citing *In re Schwendeman*, 4th Dist. Nos. 05CA18 and 05CA25, 2006-Ohio-636. We will not reverse a judgment as being against the manifest weight of the evidence when the record contains some competent, credible evidence going to all the essential elements of the case. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus. In conducting our review, we must make every reasonable presumption in favor of the trial court's findings of fact. C.V.M. I, citing *Myers v. Garson*, 66 Ohio St.3d 610, 614, 1993-Ohio-9, 614 N.E.2d 742. We give deference to the trial court as the trier of fact because it is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." C.V.M. I, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984).

**{¶6}** Because legal custody where parental rights are not terminated is not as drastic a remedy as permanent custody, the trial court's standard of review in a legal custody proceeding is not clear and convincing evidence as in permanent custody proceedings, but merely preponderance of the evidence. C.V.M. I, citing *In re D.P.*, 10th Dist. Franklin No. 05AP-117, 2005-Ohio-5097. "Preponderance

of the evidence" means "evidence that's more probable, more persuasive, or of greater probative value." *In re M.F.*, 5th Dist. Ashland No. 12-COA-036, 2013-Ohio-1755, quoting *State v. Finkes*, 10th Dist. Franklin No. 01AP-310, 2002-Ohio-1439.

**{¶7}** In a child custody proceeding between a parent and nonparent not arising from an abuse, neglect or dependency determination, a court may not award custody to the nonparent without first making a finding of parental unsuitability — that is, without first determining by a preponderance of the evidence that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child or that an award of custody to the parent would be detrimental to the child. *In re Perales*, 52 Ohio St.2d 89, 369 N.E.2d 1047 (1977), syllabus; *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971. The *Perales* test, however, requires that some detriment to the child be shown before he is taken away from an otherwise suitable parent. *Thrasher v. Thrasher*, 3 Ohio App.3d 210, 213, 444 N.E.2d 431 (9th Dist.1981).

**{¶8}** On remand, the trial court in this case found by a preponderance of the evidence that appellant was unsuitable because "an award of the child's custody to the [appellant] would be detrimental to the child." The trial court based this finding on the fact that appellant has a history of substance abuse, has

spent minimal time with C.V.M. since appellant and stepmother separated, has provided minimal emotional support or guidance for C.V.M., has failed to be supportive of C.V.M.'s schooling, has consistently missed C.V.M.'s extracurricular activities, consistently failed to provide any financial support for C.V.M., has stated that he would only allow C.V.M. to interact with stepmother on his own terms and has mental health problems. While we do not agree with every detail of each of the specific reasons espoused by the trial court or the relative weight the trial court may have assigned to them, in light of the entire record we cannot say that the trial court abused its discretion in finding that an award of custody to appellant would be detrimental to C.V.M.

{¶9} Appellant argues that the trial court abused its discretion by relying, in part, on evidence concerning appellant's suitability that existed prior to the juvenile court's original grant of custody to appellant in 2004. Specifically, the trial court found that appellant had a "history of substance abuse,"[1] felony convictions and possible mental health problems. The record reflects that each of these factors existed prior to 2003 when appellant was investigated by an

---

[1] We note that the trial court found appellant to have a "history of substance abuse" based on a single positive urine screen in 2003. The record reflects that appellant completed a drug and alcohol assessment with no recommendation being made and agreed to participate and follow all recommendations of the assessment including treatment, but the record is unclear as to whether he actually participated in or completed treatment or whether he submitted any subsequent urine specimens.

assigned social worker, was "deemed an appropriate [caregiver] for his child" and was granted custody of C.V.M.

{¶10} While we agree with appellant's proposition that it would generally be inappropriate for a trial court to declare a parent unsuitable based solely on negative information that the court was aware of prior to the original grant of custody in favor of that parent, such is not the case before us. First, the trial court's unsuitability determination was based on far more information than just the above pre-existing conditions. Second, the record reflects that in 2003 the court did not grant sole custody of C.V.M. to appellant originally, but rather the complaint for legal custody for C.V.M. was amended to include stepmother. Appellant explained at the trial court's hearing that stepmother was added because she "conned" or tricked him into including her in the complaint for custody and he relented in hopes of appeasing her. Stepmother testified that after appellant failed a drug test, the Cuyahoga County Department of Children and Family Services ("CCDCFS") would not allow sole custody to appellant. She testified that the complaint was amended to include her as a co-custodian after she took, and passed, a drug test. The complaint refers to her as "step mother." Although we agree that the weight to be given to appellant's felony conviction, failed drug test and prior mental health concerns is slight, we note that the record does not reflect that these factors were a non-concern in the original custody decision. To

the contrary. The record reflects that appellant may not have gained custody without stepmother joining in the complaint.

**{¶11}** We cannot fault the trial court for accepting the testimony of stepmother as more credible than the testimony of appellant. The record reveals appellant's credibility to be highly suspect. During the trial court's hearing, appellant was repeatedly confronted with reports of negative behavior on his part and in each instance appellant asserted that the reporting party was lying and/or had fabricated the incidents in question. If one were to accept appellant's testimony as true, fellow Cleveland police officers fabricated and lied about events that led to his felony convictions and the end of his police career; the principal of C.V.M.'s former school lied about being cursed at by appellant that led to the school seeking a no trespassing order against him; Warrensville Heights police lied about his aggressive conduct at a visitation pick up that occurred at the Warrensville Heights Police Department; CCDCFS lied about his positive drug test in 2003; the Cuyahoga County Juvenile Court's clinical psychologist lied in her report regarding a discussion of his mental health; and both stepmother and C.V.M.'s biological mother lied about a plethora of issues to which they testified at the hearing.

**{¶12}** The evidence indicating that appellant is presently an unsuitable parent is of far greater concern to this court than felony convictions and a failed

drug test from a decade in the past. The trial court noted that appellant has spent minimal time with C.V.M. since appellant and stepmother separated. We agree with appellant's criticism of this factor as a product, in part, of the trial court's own temporary visitation schedule whereby appellant was only alotted four hours each Wednesday and three and one-half hours each Friday to spend with C.V.M. However, beyond this limited visitation schedule, the record supports the trial court's finding that appellant has "not availed himself of the court-ordered companionship time." Significant testimony was introduced regarding incidents at C.V.M.'s bus stop, stepmother's home and the Warrensville Heights Police Department where appellant failed to make use of his visitation time due to his own conduct and his failure to communicate in a civil manner with stepmother. Consistent with this pattern of behavior, the record reflects that appellant was barred from C.V.M.'s former school, has had problems with C.V.M.'s present school and caused one daycare center to decline care of C.V.M. while another daycare center called the police and banned him from their property. Stepmother also testified that when she initially separated from appellant she had asked appellant to watch C.V.M. while she worked and he declined.

{¶13} Appellant failed to attend C.V.M.'s extra-curricular activities including his participation in organized youth football wherein he won a local championship as the team's quarterback. Appellant blamed stepmother and

C.V.M. for failing to make him aware of such opportunities to be a part of C.V.M.'s life.    Stepmother testified that she did make appellant aware of C.V.M.'s extracurricular activities.

{¶14}    The record supports the trial court's finding that appellant has failed to provide any financial or medical support for C.V.M. in the time since appellant and stepmother separated.[2]    Appellant did not deny this at the hearing despite the presentation of evidence that he had ample capability to provide such support.    There is no explanation for this failure other than that appellant chose to withhold support for C.V.M. due to his negative feelings towards stepmother and the fact that during the pendency of this case she retained custody of C.V.M.

{¶15}    The Guardian ad litem ("GAL") report and the juvenile court's child custody / visitation evaluation performed by Dr. A. Justice raise the greatest concerns regarding appellant's unsuitability.    We are mindful that the test for parental "suitability" is different from the "best interest" test.    A pure "best interest" test looks totally to the best situation available to the child and places the child in that situation.    *Thrasher v. Thrasher*, 3 Ohio App.3d 210, 213, 3 Ohio B. 240, 444 N.E.2d 431 (9th Dist.1981).    The *Perales* test, however, requires that

---

[2]The record reflects that the sole item that appellant provided C.V.M. in the time since appellant and stepmother separated was a pair of hand-me-down shoes, which were many sizes too large for C.V.M.

some detriment to the child be shown before he is taken away from an otherwise suitable parent. Simply because one situation or environment is the "better" situation does not mean that the other is detrimental or harmful to the child. *In re Porter*, 113 Ohio App.3d 580, 589, 681 N.E.2d 954 (3d Dist.1996). Our task is not to weigh whether custody in favor of stepmother would be a better situation for C.V.M. than custody in favor of appellant. However, we must consider whether placement of C.V.M. in the custody of appellant would be detrimental to the child. We find that in addition to the previously discussed factors, the GAL report and the child custody / visitation evaluation strongly support the trial court's conclusion that such custody would be detrimental.

{¶16} The child custody / visitation evaluation performed by Dr. Justice reported that appellant demonstrated "delusional ideation involving religious and persecutory themes." Appellant's personality assessment inventory suggested "suspicion, hostility, and quick anger responses." Dr. Justice observed C.V.M. and appellant interacting and described C.V.M. as being uncomfortable and possessing a "reserved demeanor with his eyes downcast." C.V.M. was "sullen and reserved" when in the company of appellant. Dr. Justice did not observe such uncomfortable behavior in C.V.M.'s interactions with others.

{¶17} Dr. Justice also noted that appellant spoke in vagaries that appeared to have no effect upon C.V.M. and which C.V.M. later confirmed

privately that he did not understand. C.V.M. told Dr. Justice that he spends just about the right amount of time with appellant and would like to spend even more time with stepmother. The record, including appellant's own testimony, indicated that when appellant does have visitation time with C.V.M., the child spends significant time alone in his room bouncing a basketball. Dr. Justice testified that C.V.M.'s responses showed that "he is a sad child who frequently feels like crying and who looks upon his future with a sense of uncertainty and apprehension" and noted that C.V.M.'s mental health records indicated that he possessed adjustment disorder with anxiety and individual counseling had been recommended to address fear and anxiety about his father. Dr. Justice further testified that C.V.M. was afraid of appellant because he is mean.

{¶18} In regards to appellant's mental health, Dr. Justice concluded:

[Appellant] likely has a psychotic condition. He is highly defensive and has a history of providing little information upon clinical evaluation, necessarily making precise diagnosis difficult. [Appellant] has consistently had problems in conforming his behavior to meet societal standards. He presently demonstrated a stilted, overly intellectualized style of interacting that is often seen in individuals suffering schizophrenia. He was pushy and insistent when interacting with [C.V.M.] for purposes of the present evaluation. He clearly prioritized his own needs over those of the child.

{¶19} The GAL testified that C.V.M. prefers to live with stepmother but to have contact with appellant. The GAL noted that C.V.M. viewed stepmother

as "mom." In fact, the record reflects that C.V.M. was unaware of the fact that stepmother was not his biological mother until the pendency of this custody dispute when appellant informed him of that fact.

{¶20} The GAL further testified that C.V.M. has nightmares of people breaking into his home and kidnapping him and is fearful that he won't see stepmother again should appellant gain custody. C.V.M reported that he was also fearful that should custody be awarded to appellant, he would no longer have contact with his biological mother and siblings, at least one of whom C.V.M. has developed a close relationship with.

{¶21} Consistent with these concerns, appellant testified at the hearing that should he gain custody of C.V.M., he would "probably" allow C.V.M. to see stepmother but only "on his terms." Appellant had no idea what his terms would be and stated that he would raise his son as he saw fit. The record reflects that appellant sent a threatening text message to stepmother intimating that she would not see C.V.M. in the future.

{¶22} The GAL testified that custody in favor of appellant would be detrimental to C.V.M. This court has previously found such an opinion to carry significant weight. *See*, *e.g.*, *In Re: S.M.,* 160 Ohio App.3d 794, 2005-Ohio-2187, 828 N.E.2d 1044 (8th Dist.). The GAL based his opinion in large part on appellant's own position that C.V.M. would only be allowed contact

with stepmother on his terms. The record reflects that appellant's behavior towards stepmother has created a hostile environment in which the parties are unable to adequately communicate in regard to parenting and visitation issues, even in the face of a court-ordered visitation schedule. Appellant's own testimony at the hearing confirms his inability to establish the necessary cooperation with stepmother to facilitate court-ordered visitation. The GAL's concern that appellant would frustrate or terminate contact between C.V.M. and stepmother to the detriment of C.V.M. is supported by the record. Dr. Justice's evaluation of C.V.M. demonstrates the detriment that the mere threat of the severance or disruption of C.V.M.'s relationship with stepmother has had on C.V.M.'s mental health during this custody dispute.

{¶23} The GAL also expressed his concerns regarding appellant's inability to interact appropriately with others, particularly C.V.M.'s school and daycare staff. We share the GAL's concern on this point. The record is replete with evidence of appellant's inability to interact in a civilized manner with others, much less stepmother, and the testimony of all parties including appellant, revealed that he treats her with open hostility. Even if we were to disregard the mental health evaluation of Dr. Justice, it is firmly established in the record that appellant is unable to conduct himself in a reasonable and appropriate manner when interacting with third parties involved in C.V.M.'s life and that his failure to

do so is detrimental to C.V.M.

**{¶24}** Although natural parents have a fundamental liberty interest in the care, custody and management of their children and a finding of parental unsuitability is not to be made lightly, considering the above record we cannot say that the trial court abused its discretion in finding appellant to be unsuitable. A preponderance of the evidence demonstrated that appellant is an unsuitable parent and that an award of the custody to the appellant would be detrimental to C.V.M.

**{¶25}** Appellant's sole assignment of error is overruled.

**{¶26}** The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____

EILEEN A. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
MARY EILEEN KILBANE, J., CONCUR