[Cite as *In re V.P.*, 2020-Ohio-5626.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE V.P., ET AL.

Minor Children

[Appeal by Mother]

:
:
:
:
:

No. 109649

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 10, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-17911684 and AD-17911685

---

### *Appearances:*

Patrick S. Lavelle, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Willie Mitchell, Assistant Prosecuting Attorney, *for appellee.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Appellant-mother ("mother") appeals from the juvenile court's decision that awarded legal custody of her children, V.P. and A.P., to their maternal aunt ("maternal aunt"). For the reasons that follow, we affirm.

{¶ 2} On August 3, 2017, the Cuyahoga County Division of Children and Family Services ("CCDCFS" or the "agency") filed a complaint for dependency with

a dispositional request of legal custody to mother with protective supervision to CCDCFS. On August 24, 2017, the agency filed a motion for predispositional temporary custody to the children's maternal aunt, which the court granted at a hearing conducted that same day. On September 8, 2017, the agency filed a notice of its amendment of the dispositional request from legal custody to mother with protective supervision to legal custody of the children to their maternal aunt.

{¶ 3} CCDCFS developed a case plan for mother that required her to complete services for substance abuse, domestic violence, and mental health; and provide for the basic needs of the children, including housing.[1] The court also appointed William Daugherty as the children's guardian ad litem ("GAL").

{¶ 4} On October 4, 2017, a magistrate conducted an adjudicatory hearing during which the court considered evidence and testimony. The magistrate found that the agency proved by clear and convincing evidence certain allegations contained in the dependency complaint. Specifically, the magistrate found that (1) mother was diagnosed with paranoid schizophrenia and bipolar disorder, which interfered with her ability to provide adequate care for the children on a consistent basis; and that mother was not addressing her mental health issues; (2) mother was unable to secure stable housing for herself and her children; (3) mother was convicted for drug possession; and (4) father lived out of state and refused to provide

---

[1]CCDCFS also developed a case plan for the children's father. Although their father was subsequently involved in the proceedings and even sought legal custody of the children while mother was in prison, and later requested shared parenting with maternal aunt, he failed to appear at the final hearing, agreed to the agency's request for legal custody to maternal aunt, and is not a party to this appeal.

care for the children. The magistrate found that the children lacked adequate parental care, adjudicated the children dependent, and ordered that the children remain with their maternal aunt. On October 31, 2017, the trial court adopted and approved the magistrate's decision.

{¶ 5} The court continued the dispositional hearing twice because mother disagreed with the disposition of legal custody to maternal aunt and the agency considered amending the disposition based on mother's progress on her case plan. On January 19, 2018, CCDCFS determined that it was in the children's best interest to amend the dispositional prayer from legal custody to temporary custody to maternal aunt because mother was making progress towards case plan compliance, including participating in substance abuse and mental health services. Mother agreed to the amended disposition and the children were committed to the temporary custody of maternal aunt, with reunification as the permanency plan.

{¶ 6} However, mother was subsequently incarcerated. On May 14, 2018, CCDCFS determined it was in the children's best interest to modify temporary custody to legal custody to maternal aunt because mother failed to complete the objectives of the case plan. Although mother completed a domestic violence program, she failed to complete substance abuse services, mental health services, or provide basic needs for the children.

{¶ 7} On March 11, 2019, following Mother's release from prison, the magistrate conducted a dispositional review hearing. The court held in abeyance all motions regarding custody of the children because the court found that "there has

been progress on the case plan by the mother and the father[,] and progress is being made in alleviating the cause for the removal of the child[ren] from the home." The court noted that mother engaged in substance abuse and mental health services while in prison and was continuing with those services. The magistrate found, however, that it would not be in the children's best interest to return to mother's home, but that continued temporary custody with the maternal aunt would be in the children's best interests. However, the court determined that reunification or legal custody to a relative was still the custody and permanency plan. Subsequently, the agency filed an amended case plan to provide for additional visitation between mother and the children.

{¶ 8} On July 11, 2019, a juvenile court magistrate conducted an evidentiary hearing on the agency's motion to modify temporary custody to legal custody to maternal aunt. Mother also moved the court to terminate temporary custody and award her legal custody of the children.

{¶ 9} Shamatee White, child protective specialist with CCDCFS, testified that she was assigned to the children's case and developed a case plan for both mother and father. As part of her case plan, mother was to engage in domestic violence, substance abuse, and mental health services and provide for the children's basic needs. White testified that mother completed the requisite domestic violence services.

{¶ 10} Regarding mental health services, White testified that mother received services from Murtis Taylor and was compliant with her counseling and

treatment. She stated that mother decided not to take any of her prescribed medication because she was pregnant.

{¶ 11} Regarding basic needs, White explained that basic needs pertained to consistency and stability in housing, including payment of rent and utilities, and providing clothing and food. White testified that mother had appropriate housing, the utilities were in service, and there was food in the home. However, White stated that she was concerned because mother was behind on her rent, and to date, had not provided documentation on timely payment of rent and a source of income. White stated that based on mother's inability to provide verification of rent payments, the agency was not satisfied that mother had completed the basic-needs aspect of her case plan.

{¶ 12} Regarding substance abuse services, White testified that mother had not completed this aspect of her case plan. According to White, these services were implemented because of mother's long history of substance abuse. Although mother completed treatment and services in prison and was attending aftercare at Murtis Taylor, mother had not achieved the agency's requisite six-month sobriety threshold. The evidence revealed that in March 2019, when mother was released from prison, her hair follicle drug screen was positive for drugs. Subsequent hair follicle screens revealed lower levels, and all urinalysis drugs screens had been negative. In May 2019, both hair follicle and urine screens revealed negative results. According to White, the agency required six-months of sobriety from the May negative results, which would not occur until November 2019.

{¶ 13} White testified that mother regularly visited with the children, including unsupervised and overnight visits. According to White, the visits were appropriate and there were no concerns. She stated that the children enjoyed visiting with their mother.

{¶ 14} White testified that the agency requested that the court grant legal custody to maternal aunt because there was still concern about mother's substance abuse issues, and that the agency wanted to see a longer period of sobriety. Additionally, she stated that the children had been with maternal aunt for over two years and that the children needed stability.

{¶ 15} The GAL offered an oral report at the hearing recommending that the court grant legal custody to maternal aunt. The GAL noted that the children enjoyed visiting with their mother and that mother had made progress on her case plan, but because the children had been in the temporary custody of the agency for over two years, they needed permanency. The GAL noted that the children had bonded with their maternal aunt, she was a good role model, and the children were doing well in her care.

{¶ 16} At the conclusion of the hearing, the magistrate granted the agency's motion to modify temporary custody to legal custody to maternal aunt. The magistrate subsequently issued a written decision granting the agency's motion and awarding legal custody to maternal aunt, but ordered scheduled visitation with mother. The magistrate's decision found that mother had made progress on the case plan, but not in alleviating the cause for the removal of the children from the home.

The magistrate also found that the permanency and custody plan was legal custody to maternal aunt, continued temporary custody was not in the children's best interest, and the children's return to mother would be contrary to the children's best interest. The magistrate's decision contained the following factual findings:

> [CCDCFS] has made reasonable efforts to finalize the permanency plan for the [children]. These efforts are substance abuse assessment and treatment as recommended, mental health services, and counseling services for domestic violence. The mother has appropriate housing[;] however, there is concern regarding mother's ability to financially maintain rent. The mother is unemployed and has applied for SSI. The mother submitted to drug screening in 3/2019 which was positive through hair follicle screening. The mother submitted to a hair follicle screening in April which was position for cocaine but a much lower level. Mother's screening in May and July were negative. The Mother needs to maintain sobriety. The Mother has been having regular unsupervised visitations which have gone well.

{¶ 17} Mother filed timely objections contending that the weight of the evidence did not support the magistrate's decision because mother substantially complied with her case plan by (1) completing her domestic violence classes; (2) compliance with her mental health services and aftercare with Murtis Taylor where she also addressed her substance abuse concerns; (3) securing safe, stable, and appropriate housing with regular appropriate unsupervised visits; and (4) her urine drug screens had been negative since March, and all hair follicle screens had been negative since May.

{¶ 18} The agency opposed mother's objections, contending that although mother had made progress toward her case plan, compliance with the case plan was not substantial because she had not demonstrated six months of sobriety, had not

provided proof of employment or other source of income, and was behind in paying her rent. The agency contended that competent and credible evidence supported the magistrate's decision that mother failed to alleviate the conditions that caused the children's removal.

{¶ 19} On October 11, 2019, the trial court conducted a hearing on mother's objections. The court stated in its journal entry that "[t]here has been compliance on the case plan by mother and progress has not been made in alleviating the cause for removal of the [children] from the home. Mother no longer has her own housing." Although the court found that returning the children to mother's home would be contrary to the children's best interests and welfare, the court noted that the custody and the permanency plan was "reunification." The court stated:

> Mother reported that her landlord had failed to remedy the deplorable conditions in her home for herself, the [children] and unborn child, that she vacated the home and moved in with her sister and mother (maternal grandmother) pending notification [from] CMHA regarding her application for housing assistance.

The court continued the matter for a review hearing "to approve a permanency plan for the [children] pending ruling upon the objections and review of the Magistrate's Decision."

{¶ 20} The trial court conducted another review hearing in December 2019. The court stated in its journal entry that "[t]here has been compliance on the case plan by mother and progress has been made in alleviating the cause for removal of the [children] from the home. Mother has been approved for housing through CMHA and placed on a wait list for 90 days pending the birth of her unborn child."

Although the court found that returning the children to mother's home would be contrary to the children's best interests and welfare, the court again noted that the custody and permanency plan was "reunification." The court stated:

> The [children] continue to do well in relative placement and mother is able to arrange visitation openly with the [children]. Mother continues to reside with her sister and mother (maternal grandmother). Mother receives TANF, and food stamp assistance. Mother reports that her mental health provider, Murtis Taylor, is assisting her in obtaining social security benefits.

The court continued the matter for a final review hearing "to approve a permanency plan for the [children] pending ruling upon the objections and review of the Magistrate's Decision."

{¶ 21} On March 12, 2020, the trial court conducted a final review hearing, and a transcript of the hearing has been provided to this court. At the hearing, the court stated that mother had not obtained housing for purposes of reunification. During the hearing, mother alleged that CCDCFS was "resistant" to providing the appropriate referral for housing once mother lost her housing following the magistrate's hearing. The court responded that mother did not raise this issue at the prior review hearings. The agency advocated that the court overrule mother's objections, contending that the children had been with their maternal aunt, who also had custody of two of the children's biological siblings since 2017, the children have bonded with her, and granting legal custody to maternal aunt would be in the children's best interest. The trial court orally overruled mother's objections and granted legal custody to maternal aunt with parenting time to mother. Accordingly,

the trial court affirmed, approved, and adopted the magistrate's decision as amended by the court.

{¶ 22} Mother now appeals, raising two assignments of error, which will be addressed together.

## I.  Standard of Review

{¶ 23} A trial court's ruling on objections to a magistrate's decision lies within the discretion of the trial court, and will not be reversed on appeal absent an abuse of discretion. *Hissa v. Hissa*, 8th Dist. Cuyahoga Nos. 99498 and 100229, 2014-Ohio-1508, ¶ 17. An abuse of discretion occurs when the court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). A juvenile court's decision regarding a child's best interest in a legal-custody proceeding, if supported by competent, credible evidence, is not unreasonable. *In re A.W.*, 1st Dist. Hamilton No. C-140142, 2015-Ohio-489, ¶ 10, citing *In re Wilkenson*, 1st Dist. Hamilton Nos. C-010402 and C-010408, 2001 Ohio App. LEXIS 4589, 5-6 (Oct. 12, 2001).

## II.  Legal Custody

{¶ 24} Mother raises the following assignments of error:

I.      The trial court's award of legal custody to [CCDCFS], despite [the agency's] failure to make reasonable efforts to eliminate the continued removal of the children from their home and to return the children to their home, violated state law and [mother's] right to due process of the law as guaranteed by the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution.

II.     The trial court's decision to award legal custody to the maternal aunt was an abuse of discretion.

{¶ 25} Pursuant to R.C. 2151.419, the agency that removed the child from the home must have made reasonable efforts to prevent the removal of the children from the children's home, eliminate the continued removal of the child from the home, or make it possible for the child to return home safely. It is the agency's burden to demonstrate that it has made reasonable efforts. *Id.*; *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 29.

{¶ 26} In mother's first assignment of error, she contends that the award of legal custody violated her due process rights because CCDCFS did not make reasonable efforts toward reunification by failing to provide support and services to her to assist in remedying the conditions that caused removal of the children from her home. Specifically, she contends that CCDCFS did not make any case plan modifications or referrals regarding housing once she lost her housing following the magistrate's hearing.

{¶ 27} We initially note that mother did not raise as an objection that CCDCFS did not make reasonable efforts toward reunification. Typically, failure to raise a specific objection to the magistrate's decision waives the issue on appeal. *See* Juv.R. 40(D)(3)(b)(iv). However, mother's lack of housing did not occur until after the magistrate's hearing. Nevertheless, we find no merit to mother's argument because she failed to timely raise this issue with the trial court, which would have allowed the court to address her concerns.

{¶ 28} The trial court conducted two review hearings before mother finally alleged that the agency failed in its responsibilities in assisting her with obtaining

housing. Rather, the court was advised that mother attempted to remedy her housing situation on her own, rather than seek the agency's help. If mother felt that CCDCFS was not providing her reasonable services regarding housing, she should have raised this issue at the two review hearings held in October and December 2019. In fact, when mother finally raised the issue at the final hearing, the trial court questioned why Mother did not notify the court at the prior review hearings that the agency was allegedly not making the appropriate referrals. At that point, the court had held the objections and the magistrate's decision in abeyance for six months to allow mother to achieve sobriety and fulfill her case plan objectives. Accordingly, the trial court did not abuse its discretion in discounting mother's untimely complaint and objection.

{¶ 29} Mother also contends in her first and second assignments of error that the award of legal custody to maternal aunt was an abuse of discretion.

{¶ 30} Legal custody is defined by R.C. 2151.011(B)(21) as follows:

[A] legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities.

{¶ 31} Legal custody is significantly different than the termination of parental rights because despite losing legal custody of a child, the parents of the child retain residual parental rights, privileges, and responsibilities. R.C. 2151.353(A)(3)(c). For this reason, "'when a juvenile court awards legal custody

following an adjudication of abuse, neglect, or dependency, it does so by examining what would be in the best interest of the child based on preponderance of the evidence.'" *In re A.C.*, 8th Dist. Cuyahoga No. 108442, 2019-Ohio-5127, ¶ 15, quoting *In re T.R.*, 8th Dist. Cuyahoga No. 102071, 2015-Ohio-4177, ¶ 44. "'Preponderance of the evidence' means 'evidence that's more probable, more persuasive, or of greater probative value.'" *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 7, quoting *In re D.P.*, 10th Dist. Franklin No. 05AP-117, 2005-Ohio-5097, ¶ 52.

{¶ 32} "Unlike R.C. 2151.414(D), which sets forth specific factors that the court must consider before terminating parental rights and granting permanent custody, R.C. 2151.353(A)(3) does not independently set forth factors that the court should consider for determining the child's best interests in a request for legal custody." *In re G.M.*, 8th Dist. Cuyahoga No. 95410, 2011-Ohio-4090, ¶ 16. Thus, the factors in R.C. 2151.414(D) are not mandatory but instructive when making a best-interest-of-the-child determination in legal custody matters. *Id.*; *In re M.J.M.*, 8th Dist. Cuyahoga No. 94130, 2010-Ohio-1674, ¶ 16. The statute instructs the court to consider:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services

agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 33} In this case, the testimony provided at the magistrate's hearing demonstrated that mother had regular unsupervised visitation with her children, and the visits were appropriate. However, at the hearing before the trial court on mother's objections, maternal aunt stated that weekend visitation had become problematic because it was interfering with A.P.'s behavior at school. She expressed her frustration about having two sets of rules in the different households and having to "deprogram" the children when they returned from their mother's home. Additionally, she expressed concern about mother allowing V.P. to use electronic devices because V.P. had been accessing pornography.

{¶ 34} The GAL reported that the children wanted to be with their mother as much as they could. He stated that typically he would request an extension for mother because of mother's progress on her case plan and for her to achieve sobriety, but because the children had been in temporary custody for two years, waiting for mother to achieve six-month sobriety was not in the children's best interest. According to the GAL, maternal aunt is an appropriate caregiver, and a good role model, and the children do well in her care. Additionally, the magistrate heard testimony that maternal aunt also has custody of two of mother's other

children, and that all the children in the household have bonded with each other. Accordingly, the GAL recommended that the court grant legal custody to maternal aunt because it was in the children's best interests.

{¶ 35} Regarding the children's custodial history, at the time of the magistrate's hearing, the children had been living with their maternal aunt for over two years. When the trial court conducted its final review hearing on mother's objections, the children had been in maternal aunt's custody for over 30 months. Accordingly, we agree with the trial court that the children deserve permanency and stability.

{¶ 36} Although mother had made significant progress in her case plan, she had not maintained six months of sobriety by the magistrate's hearing. Admittedly, mother's drug screens were on the downward trend, indicating no drug use, but she was also unemployed and unable to provide proof of income. And despite having appropriate housing at the time of the magistrate's hearing, mother was unable to show that she was current on her rent, which caused concern for mother being evicted. Additionally, mother had failed to demonstrate any source of income. Accordingly, mother had not remedied the conditions that lead to her children's removal.

{¶ 37} The record before this court shows that the trial court delayed ruling on the objections to the magistrate's decision to allow mother to complete her case plan and alleviate the conditions that caused the children's removal. The trial court afforded mother every opportunity to prove sobriety and secure housing. Mother

was able to achieve six months of sobriety; however during that time, she could not maintain stable housing. Accordingly, competent and credible evidence was presented to support the magistrate's decision that mother failed to remedy the conditions that caused the children's removal. The trial court did not abuse its discretion by adopting and approving the magistrate's decision, as amended, and awarding legal custody to the children's maternal aunt.

{¶ 38} Accordingly, the assignments of error are overruled.

{¶ 39} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

MARY J. BOYLE, P.J., and
SEAN C. GALLAGHER, J., CONCUR