[Cite as *In re L.T.*, 2022-Ohio-1586.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE L.T. | : | |
| | : | |
| Minor Child | : | No. 110676 |
| | : | |
| [Appeal by L.T., Father] | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 12, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD19903366

---

### *Appearances:*

Cordell │Cordell and Danielle C. Kulik, *for appellant*.

Cullen Sweeney, Cuyahoga County Public Defender, and
Britta Barthol, Assistant Public Defender, *for appellee*.

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee* Cuyahoga County Division of
Children and Family Services.

EMANUELLA D. GROVES, J.:

{¶ 1} This cause came to be heard on the accelerated calendar pursuant to App.R. 11.1 and Loc.App.R. 11.1. Appellant-father G.B. ("Father") appeals from the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division

("juvenile court"), that granted legal custody of his child L.T. (d.o.b. 10/10/17) to appellee-mother G.T. ("Mother"). For the reasons set forth below, we affirm.

**Factual and Procedural History**

{¶ 2} On March 20, 2019, the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency") filed a complaint alleging neglect and abuse for L.T. and his brother, J.T. (d.o.b. 04/04/2016).[1] Specifically, L.T. suffered a second-degree burn to his leg from an exposed radiator. The agency alleged that Mother's explanation of what happened was inconsistent with the injury. The complaint also alleged that Mother had several mental health issues that interfered with her ability to care for her children. The agency sought to place L.T. in Father's temporary custody and moved for him to be placed in Father's custody while the case was pending.[2]

{¶ 3} At a hearing on April 9, 2019, both Mother and Father preliminarily denied the allegations in the complaint. The juvenile court granted the motion to place L.T. with Father pending the dispositional hearing.

{¶ 4} In June 2019, the juvenile court held an adjudicatory hearing. The parties stipulated to an amended complaint and to a finding that L.T. was dependent. The amended complaint noted that L.T. suffered a second-degree burn to his leg but deleted the language about Mother's explanation being inconsistent.

---

[1] This appeal solely focuses on the custody of L.T.

[2] The agency sought temporary custody of J.T., whose father is deceased.

{¶ 5} By agreement of the parties, the juvenile court proceeded immediately to the dispositional hearing. The juvenile court placed L.T. in the temporary custody of Father. At that time, the juvenile court noted that Mother was progressing on her case plan and had completed parenting classes. The agency's case plan called for the reunification of the child with Mother.

{¶ 6} On December 6, 2019, Mother filed a motion to modify visitation requesting that she be allowed unsupervised visits. At the time, Father was supervising the visits with L.T. Mother alleged that due to the "nature of the relationship" and some unspecified behavior of Father she felt unsupervised visits would be more appropriate. The agency and the GAL did not object to the request, however, Father did. On December 12, 2019, the juvenile court granted the request, over Father's objections.

{¶ 7} On February 19, 2020, the agency filed a motion for first extension of temporary custody to Father that the juvenile court granted on March 16, 2020.

{¶ 8} On August 27, 2020, the agency filed a motion for second extension of temporary custody to Father. On November 9, 2020, Father filed an "application for custody" requesting legal custody of L.T.

{¶ 9} After requests for continuance filed by Father and a new GAL,[3] the case came for hearing on November 20, 2020. At that time, all parties agreed to continue the case to allow the agency to conduct a review and obtain additional

---

[3] The former GAL requested to withdraw from the case for personal reasons.

information. The case was continued for hearing on the custody motions to January 22, 2021.

{¶ 10} On December 29, 2020, the agency amended its dispositional motion requesting that Mother obtain legal custody of L.T. and J.T.

{¶ 11} The dispositional hearing was held as scheduled on January 22, 2021, over the phone before a juvenile court magistrate. Brianna Osborne ("Osborne"), a social worker for the agency, testified that Mother had completed all case plan objectives. This included completing parenting classes, and additionally completing an early childhood developmental class on her own initiative. Mother also took steps to address her mental health and was meeting with a counselor biweekly. Osborne also noted that Mother's home was safe and appropriate. Mother had built heater and radiator covers to protect her children in the home. Osborne indicated she had no concerns about Mother's mental health, or her ability to meet the basic needs of her children.

{¶ 12} Osborne noted that Mother had started overnight visits with L.T. earlier that month. Although Mother had started overnight visits with J.T. in June 2020, Father objected to overnight visits with L.T. and did not permit them until January 2021. This was despite a court order for overnight visits.

{¶ 13} With respect to Father, Osborne testified that Father did not have any case plan objectives. Osborne testified that Father was meeting L.T.'s basic needs and she had no issues with his ability to do so.

**{¶ 14}** Osborne ultimately recommended that L.T. be returned to Mother. Osborne noted that the factors the agency looked at were Mother's diligent efforts to remedy the conditions that caused the children to be removed from her home. Mother had resolved any concerns the agency had. Osborne noted that maintaining the sibling relationship was a factor in the agency's recommendation as well. The agency felt that reunification with Mother was in the best interest of both children.

**{¶ 15}** Father also testified. He testified that prior to the agency's involvement, he had substantial involvement with L.T., seeing him five or six times per month while L.T. was in Mother's custody. Father had safe appropriate housing and lived in a two-bedroom apartment with his mother and uncle.

**{¶ 16}** The GAL recommended that L.T. remain with Father and that J.T. be returned to Mother. He had hoped that Mother and Father would be able to agree to a shared parenting plan. Since they could not come to an agreement, the GAL felt it was in the best interest of L.T. to remain with Father.

**{¶ 17}** On February 23, 2021, the magistrate issued an order granting Father's motion for legal custody of L.T. with protective supervision to the agency.

**{¶ 18}** On March 8, 2021, Mother filed a motion for "immediate custody" and filed objections to the decision of the magistrate. Mother's objections raised the court's disregard of her completed case plan objectives and Father's failed cooperation with the court-ordered overnight visitation. Mother based her request for immediate custody on a referral received by the agency on March 4, 2021, alleging that L.T. was the victim of sexual abuse. Mother argued L.T. should be

placed in her custody because it was reported that Father was not cooperating with the investigation.

{¶ 19} On June 14, 2021, the juvenile court heard testimony on Mother's objections to the decision of the magistrate. As a preliminary matter, the agency's attorney noted that it did not object to the decision of the magistrate to give Father legal custody because it suspected the magistrate found both parents appropriate and made a "hairline" decision about which parent should obtain custody. As such, the agency did not see an error in the magistrate's decision and elected not to object to it.

{¶ 20} Mother presented her case, calling Osborne to testify. Osborne testified again that the agency requested custody to Mother because of Mother's completion of her case plan goals. She also reiterated that L.T. and J.T.'s sibling bond weighed heavily in the agency's decision.

{¶ 21} Osborne also testified that Father did not appropriately maintain speech-therapy services for L.T. Osborne alleged that Father did not take the steps necessary to ensure that L.T.'s speech therapy would continue when he entered public school. At the time of the hearing, L.T.'s speech therapy had stopped with the original provider and had not started with the school district due to Father's inaction.

{¶ 22} The juvenile court judge asked Osborne whether she remembered a period when Father withheld visits from Mother. Osborne testified that Father withheld overnight visits between Mother and L.T. for approximately six months.

{¶ 23} Mother also called Erin Deak ("Deak") to testify. Deak, a former social worker with CCDCFS, was assigned to investigate the allegations of sexual abuse alleged to have occurred while L.T. was in Father's custody. The allegations stemmed from an incident at L.T.'s daycare where "a pool" of blood was in his diaper. Deak testified that, initially, Father was confused and did not understand why they were investigating. Deak had concerns because Father was not allowing them access to L.T. for interviews or further medical examination. However, Deak noted that neither Osborne nor Osborne's supervisor shared her concerns. Father did eventually allow L.T. to be interviewed and examined. Afterward, the agency found the allegations of sexual abuse to be unsubstantiated. Deak testified that she remained concerned about Father's behavior as she believed that Father "lied to her face" multiple times. In contrast, she felt Mother was very forthright.

{¶ 24} Finally, the GAL gave his report maintaining his position that L.T. should be placed with Father. The basis for his recommendation of Father over Mother was the length of time L.T. had been with Father and continued stability for the child.

{¶ 25} On June 16, 2021, the juvenile court made its ruling, finding that Mother's objections to the decision of the magistrate were well taken. The juvenile court granted the agency's motion to terminate temporary custody and committed L.T. to the legal custody of Mother with protective supervision to the agency.

{¶ 26} Father now appeals assigning the following errors for our review.

## Assignment of Error No. 1

The court's decision to award custody to Mother was against the manifest weight of the evidence.

## Assignment of Error No. 2

The court erred in approving the permanency plan of the agency.

## Assignment of Error No. 3

The court erred in reversing the magistrate's decision absent an error in factual determination or legal application.

## Assignment of Error No. 4

The court erred in awarding custody to Mother when she did not sign a statement of understanding.

## Law and Analysis

### Manifest Weight of the Evidence

{¶ 27} In his first assignment of error, Father challenges the court's decision awarding legal custody to Mother arguing that it was against the manifest weight of the evidence.

{¶ 28} If a child is adjudicated abused, neglected, or dependent, "a juvenile court may award legal custody to any parent or person who files a motion requesting legal custody." *In re J.W.*, 8th Dist. Cuyahoga No. 108139, 2019-Ohio-3666, ¶ 14. "A trial court must determine the appropriateness of legal custody in accordance with the best interest of the child as supported by the preponderance of the evidence." *Id.* at ¶ 15, citing *In re G.W.*, 8th Dist. Cuyahoga No. 103706, 2016-Ohio-5242, ¶ 21; *In re C.V.M.*, 8th Dist. Cuyahoga No. 99426, 2013-Ohio-3361, ¶ 6. "A preponderance of the evidence requires evidence that is more probable, more

persuasive, or of greater probative value." *Id.,* citing *In re G.W.*; *In re T.R.,* 8th Dist. Cuyahoga No. 102071, 2015-Ohio-4177, ¶ 44.

{¶ 29} "A reviewing court will not overturn a grant of legal custody absent an abuse of discretion." *Id.* at ¶ 17, citing *In re Nice*, 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (7th Dist.2001). An abuse of discretion connotes a ruling that is "unreasonable, arbitrary, or unconscionable." *In re M.J.M.*, 8th Dist. Cuyahoga No. 94130, 2010-Ohio-1674, ¶ 8, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 30} This court has consistently held that R.C. 2151.353(A)(3) does not independently set forth factors that should be considered for determining the child's best interests in a request for legal custody. *In re V.P.*, 8th Dist. Cuyahoga No. 109649, 2020-Ohio-5626, ¶ 32. Nevertheless, we have used R.C. 2151.41(D), the best interest factors in determinations of permanent custody decisions, as a guideline for what to consider. *Id.*

{¶ 31} Under R.C. 2151.41(D), relevant factors include:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 32} In support of his argument that he is better suited for custody of L.T., Father points to the circumstances that led to the agency's involvement and testimony at the dispositional hearing regarding Mother's lack of a car, Mother "only" having two overnight visits that resulted in L.T. having nightmares, Mother's felonies, jail time, and specific allegations of prior sex offenses, and Father's willingness to facilitate parenting time with Mother if awarded custody. Father further alleged that J.T.'s and L.T.'s sibling bond would remain intact because they see each other weekly and would continue to do so.

{¶ 33} Framed in this way, one could see Father's point. However, a review of the record provides more clarity. Father alleges that Mother lied about how L.T. was burned. However, the record reflects Father and Mother stipulated to an amended complaint of dependency. Further, L.T.'s injury came from an exposed radiator that Mother addressed by building heater and radiator covers. Mother attended the agency-mandated parenting classes and took the initiative to seek additional parenting education.

{¶ 34} While Mother did not own a car, there was no evidence in the record that Mother's reliance on public transportation impeded her ability to visit with L.T. or to obtain appropriate care for him.

{¶ 35} Even the "lack" of overnight visitation was not a negative factor against Mother. The record is clear that visits did not occur due to Father's unwillingness to comply with overnight visits for six months. While L.T. did initially have nightmares when the overnight visits began, by June 2021 they were no longer an issue. In contrast to Father, Mother displayed a willingness to foster a relationship between Father and L.T. Father testified that prior to agency involvement while Mother was the primary caregiver, he saw L.T. five to six days every month, and had several extended visits with L.T.

{¶ 36} As to Mother's prior criminal history, Father has failed to show its relevance to the juvenile court's decision. The record is clear that Mother's criminal history was not the basis for the removal of the children, nor was any evidence presented that Mother had any current or pending criminal matters that were of concern.

{¶ 37} The juvenile court's independent review included the new testimony of Deak regarding the sexual-abuse allegations. Father's response to the investigation was not stellar; however, he did eventually cooperate leading to the allegations being unsubstantiated. Deak made negative statements regarding Father. However, her testimony was contrasted by the testimony of Osborne and the recommendation of the GAL. Furthermore, a review of the record suggests that there developed a personality conflict between the worker and Father.

{¶ 38} Ultimately there were positives and negatives in this record towards both Father and Mother. Nevertheless, there was competent and credible evidence

in the record to support the juvenile court's decision to place L.T. with Mother. Both Mother and Father had stable, appropriate housing, and were capable of meeting L.T.'s basic needs. The record reflects that Mother was open to visitation between Father and L.T. but that when given the opportunity, Father obstructed visitation between Mother and L.T. Furthermore, we note that while the agency elected not to take a position after the magistrate gave custody to Father, prior to that the agency supported reunification with Mother. Finally, while the GAL recommended Father take legal custody, he did so in support of Father's relationship with L.T. and not due to any belief that Mother was unable/unsuitable to care for L.T.

{¶ 39} Based on the foregoing, there was competent, credible evidence in the record to support the juvenile court's grant of legal custody to Mother. Therefore, the juvenile court did not abuse its discretion when it placed L.T. in Mother's legal custody.

{¶ 40} Accordingly, we overrule the first assignment of error.

Juvenile Court's Approval of Permanency Plan

{¶ 41} In the second assignment of error Father argues the juvenile court erred when it approved the permanency plan that called for reunification of L.T. with Mother. We disagree.

{¶ 42} The revised code provides a method for a party to propose changes to the case plan. R.C. 2151.412(F)(2) provides that

> [a]ny party may propose a change to a substantive part of the case plan, including, but not limited to, the child's placement and the visitation rights of any party. A party proposing a change to the case plan shall

file the proposed change with the court and give notice of the proposed change in writing before the end of the day after the day of filing it to all parties and the child's guardian ad litem. All parties and the guardian ad litem shall have seven days from the date the notice is sent to object to and request a hearing on the proposed change.

*See In re: A.M.*, 9th Dist. Summit Nos. 28348 and 28352, 2017-Ohio-911, ¶ 18.

{¶ 43} The record does not reflect that Father proposed changes to the permanency plan or objected to the case plan. "'An appellate court will not consider any error which the complainant could have called to the trial court's attention at a time when such error could have been corrected or avoided by the trial court.'" *In re P.A.R.*, 8th Dist. Cuyahoga No. 107736, 2019-Ohio-1446, ¶ 41, quoting *In re T.J.W.*, 7th Dist. Mahoning Nos. 13 JE 12, 13 JE 13, and 13 JE 14, 2014-Ohio-4419, ¶ 12, citing *In re I.T.A.*, 7th Dist. Belmont Nos. 11 BE 27 and 11 BE 29, 2012-Ohio-1689. Further, Father has not alleged that there was plain error, so he has failed to preserve the issue for appeal. *Id.*, citing *In re T.J.W.* at ¶ 12.

{¶ 44} Accordingly, we overrule Father's second assignment of error.

Juvenile Court Review of the Decision of the Magistrate

{¶ 45} In the third assignment of error, Father argues that the juvenile court erred in reversing the magistrate's decision when there was no error in the findings of fact or application of the law.

{¶ 46} Similar to our review of the juvenile court's legal custody determination, our review of a juvenile court's decision to accept or reject the determination of a magistrate is whether the court abused its discretion. *In re G.J.A.*, 8th Dist. Cuyahoga Nos. 107220 and 107575, 2019-Ohio-1768, ¶ 24, citing *In*

*re J.M.G.*, 8th Dist. Cuyahoga No. 98990, 2013-Ohio-2693, ¶ 9, citing *Gobel v. Rivers*, 8th Dist. Cuyahoga No. 94148, 2010-Ohio-4493, ¶ 16. Unless the juvenile court's decision was unreasonable, arbitrary, or unconscionable, we must abide by it. *In re M.J.M.*, 8th Dist. Cuyahoga No. 94130, 2010-Ohio-1674, at ¶ 8.

{¶ 47} Father argues that the juvenile court was required to find and note any error it found in the magistrate's decision before it could sustain Mother's objections to the decision of the magistrate. That however is not the nature of the juvenile court's review of a magistrate's decision.

{¶ 48} Juv.R. 40 sets out the procedure when a party objects to the decision of a magistrate. *In re A.C.*, 8th Dist. Cuyahoga No. 108442, 2019-Ohio-5127, ¶ 18. When a party timely objects to a magistrate's decision, "the juvenile court must conduct an 'independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law.'" *Id.,* quoting Juv.R. 40(D)(4)(d). This review would be a

> "de novo review of any issue of fact or law that a magistrate has determined when an appropriate objection is timely filed. The trial court may not properly defer to the magistrate in the exercise of the trial court's de novo review. The magistrate is a subordinate officer of the trial court, not an independent officer performing a separate function."

*In re R.C.*, 8th Dist. Cuyahoga No. 96396, 2011-Ohio-4641, ¶ 11, quoting *Knauer v. Keener*, 143 Ohio App.3d 789, 793-794, 758 N.E.2d 1234 (2d Dist.2001).

{¶ 49} In other words, the juvenile court does not have the role of a court of review looking solely to see if the magistrate erred, as Father argues. Rather the

court must do an independent review, which may lead to an agreement with the magistrate's conclusions, or, as in this case, disagreement. As long as the record reflects that the juvenile court did an independent review of the evidence, the mere fact that the juvenile court came to a different conclusion than the magistrate is not, by itself, cause for overturning the decision. *See In re I.L.*, 8th Dist. Cuyahoga No. 109034, 2020-Ohio-2946, ¶ 32 (noting that a trial court may adopt a magistrate's finding of facts, yet interpret them differently and rule accordingly).

{¶ 50} In the instant case, the record reflects that the juvenile court conducted an independent review of the case before it made its decision on Mother's objections. In fact, Father acknowledges that the juvenile court independently reviewed the record; however, he argues that because the juvenile court did not point to any error, the juvenile court could not come to a different conclusion than the magistrate. This is simply not the law.

{¶ 51} It was not an error for the juvenile court to conduct an independent review of the evidence even if that review led to the juvenile court making a different conclusion than the magistrate.

{¶ 52} Accordingly, we overrule the third assignment of error.

Statement of Understanding Under R.C. 2151.353(A)(3)

{¶ 53} Finally, in the fourth assignment of error, Father argues that the juvenile court erred in granting legal custody to Mother without a signed memorandum of understanding. We disagree.

{¶ 54} R.C. 2151.353(A)(3) provides that a juvenile court may

[a]ward legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings. A person identified in a complaint or motion filed by a party to the proceedings as a proposed legal custodian shall be awarded legal custody of the child only if the person identified signs a statement of understanding for legal custody * * *.

{¶ 55} The plain language of the statute shows that the requirement of a "statement of understanding" applies to nonparents who seek to obtain legal custody of a child. *See In re R.K.*, 5th Dist. Muskingum No. CT2012-0006, 2012-Ohio-2739, ¶ 23 (finding father was not required to file a motion for legal custody or a statement of understanding, noting that the statement of understanding was intended to acknowledge and distinguish between the rights and obligations of the legal custodian and the residual rights retained by the parent); *In re L.S.*, 9th Dist. Summit No. 27338, 2014-Ohio-5531, ¶ 11.

{¶ 56} Mother was not required to submit a statement of understanding prior to being granted custody. Therefore, the trial court did not err in its decision.

{¶ 57} Accordingly, we overrule the fourth assignment of error.

{¶ 58} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

EILEEN T. GALLAGHER, P.J., and
SYLVIA S. HENDON, J.,* CONCUR

*(Sitting by assignment: Sylvia S. Hendon, J., retired, of the First District Court of
Appeals.)